■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LUIS TEJADA, Appellant.—Judgment, Supreme Court, New York County (Irving Lang, J.), rendered April 23, 1987, convicting defendant of the criminal sale of a controlled substance in the first degree in violation of Penal Law § 220.43 and sentencing him to an indeterminate term of 15 years to life in prison, unanimously reversed, on the law and the facts, and the case remanded for a new trial.

The conviction of the defendant rested largely on the testimony of an undercover police officer, Detective Frank Puello. The detective testified that he met the defendant three times prior to his arrest, on October 30, November 19 and November 27, 1985. On October 30, 1985 he was introduced to the defendant by a confidential informant in apartment 1F at 2647 Sedgwick Avenue in the County of Bronx, New York City, and he was in the company of the defendant for approximately one minute. On November 19, 1985 he saw the defendant in apartment 3C at the same address and was in defendant's presence for about five minutes. At that time, the undercover police officer discussed the sale of drugs with the defendant. On November 27, 1985, the day prior to Thanksgiving, Detective Puello went to apartment 1F at the same address and purchased cocaine from the defendant for the sum of $5,500. He was in apartment 1F for approximately five minutes.

The defendant was arrested in apartment 3C on August 7, 1986, almost nine months after the transaction.

The defense in this case was mistaken identification. Defendant contended that the person to whom Detective Puello had been introduced was a drug dealer by the name of Luis Reyes Castro who lived in apartment 2C at the same address and who had a crossed eye condition as does defendant. Castro had been killed at 2647 Sedgwick Avenue in an incident allegedly taking place, in part, in apartment 1F, on Thursday, Novem-

ber 28, 1985, the day after the purported sale by defendant to Detective Puello.

We reverse for several reasons. First, the People withheld from the defendant the fact that their confidential informant, and the man who allegedly introduced Detective Puello to the defendant, was a man named Arturo Charriez. He was produced by the defendant and testified that he was a confidential informant for the police. He further testified that the man he introduced Detective Puello to on October 30, 1985 was not the defendant but Luis Reyes Castro, the man who was killed on November 28, 1985. The name and testimony of the confidential informant was *Brady* material *(see, Brady v Maryland,* 373 US 83 [1963]), material which cast doubt on the defendant's guilt which should have been provided to the defendant. Only after Charriez had testified and after the prosecutor had refused to stipulate or concede that he was the confidential informant, did the court hold a hearing at which an agent of the Drug Enforcement Administration stated that Charriez was the informant.

Secondly, despite the fact that the defendant had requested police reports with respect to the murder of Castro, and specifically reports prepared by Police Officer Melvin Dodds, a report stating that he had found over $6,000 in apartment 2C was not provided to the defense prior to Officer Dodds' testimony or during the trial. Officer Dodds testified to finding a driver's license and residency papers that Castro purportedly needed in Santo Domingo. He did not testify to finding money. It is the defendant's contention that the money found in Castro's apartment could have been part of the money used by Detective Puello to purchase cocaine. Although the People contended that the denominations of currency found in Castro's apartment were different from the denominations used by Detective Puello, no serial numbers were recorded by Detective Puello and the defendant had a right to the report since it constituted *Rosario* material. *(See, People v Rosario,* 9 NY2d 286 [1961], *rearg denied* 9 NY2d 908, *cert denied* 368 US 866, *rearg denied* 14 NY2d 876, 15 NY2d 765; *People v Ranghelle,* 69 NY2d 56 [1986].)

Thirdly, the prosecutor improperly questioned alibi witnesses for the defendant who testified that the defendant was in Providence, Rhode Island, doing work on a store he planned to open during Thanksgiving week of 1985 and specifically on November 27, the date of the sale. Specifically, she sought to impeach the testimony of Aristedes Sivilia and James Abreu, not by bringing out convictions, but by revealing arrests.

Concur—Kupferman, J. P., Sullivan, Milonas, Rosenberger and Smith, JJ.